[932 NE2d 871, 906 NYS2d 515]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALBEIRO VALENCIA, Respondent.

Argued April 29, 2010; decided June 17, 2010

## APPEARANCES OF COUNSEL

*Kathleen M. Rice, District Attorney*, Mineola (*Judith R. Sternberg, Peter A. Weinstein* and *Tammy J. Smiley* of counsel), for appellant.

*Marianne Karas*, Armonk, for respondent.

*Richard D. Willstatter*, New York City, *Richard J. Barbuto* and *Stefani Goldin* for New York State Association of Criminal Defense Lawyers and another, amici curiae.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division, insofar as appealed from, should be affirmed. There is insufficient evidence to support a conviction for depraved indifference assault. The trial evidence established only that defendant was extremely intoxicated and

did not establish that he acted with the culpable mental state of depraved indifference.

GRAFFEO, J. (concurring). Defendant's blood alcohol level was about three times the legal limit when he drove at night in the wrong direction on a Long Island parkway at a high rate of speed. He continued on this course despite attempts by oncoming drivers to warn him of the danger he was creating. After approximately four miles, defendant crashed head-on into another vehicle and then careened into another car. Defendant's response after being informed that he had injured other people was: "I don't know and I don't care."

Defendant was indicted for, among other offenses, vehicular assault in the second degree for causing serious physical injury to another person while driving in an intoxicated condition (Penal Law § 120.03 [1]), assault in the second degree for causing serious physical injury with his automobile (Penal Law § 120.05 [4]), and assault in the first degree—the top count—for causing serious physical injury while recklessly creating a grave risk of death under circumstances evincing a depraved indifference to human life (Penal Law § 120.10 [3]). The trial court determined that the People failed to prove that defendant acted with depraved indifference at the time of the collision because he was so drunk that he was "oblivious" to the danger he created. The court did, however, find defendant guilty of first-degree, depraved indifference assault on the theory that he created a grave risk of harm by becoming extremely inebriated knowing that he would eventually drive himself home from his friend's house.

The Appellate Division reversed the first-degree assault conviction, concluding that defendant's state of mind before he drove home was too remote in time from the car crash. The reversal of that conviction reduced defendant's culpability from a class B felony to the class D felony of second-degree assault and a five-year determinate prison sentence.

We are now affirming the reduction to assault in the second degree, but on narrower grounds, with which I concur, because of the lack of evidence to support all the elements of depraved indifference assault. But this leaves an open issue: does the voluntary consumption of alcohol to the point of extreme inebriation preclude the formation of a depravedly indifferent state of mind?

For many years, the phrase "[u]nder circumstances evincing a depraved indifference to human life" had consistently been

interpreted to refer to objective circumstances, not a state of mind (*see e.g. People v Register*, 60 NY2d 270 [1983]; *People v Sanchez*, 98 NY2d 373 [2002]). As a result, it was recognized that the intoxication defense (*see* Penal Law § 15.25) did not apply to the depraved indifference element (*see People v Register*, 60 NY2d at 279).

In a series of cases that culminated with *People v Feingold* (7 NY3d 288 [2006]), this Court declared that depraved indifference is a state of mind. In holding that depraved indifference is a mens rea component, this state of mind element was described in *Feingold* as "best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (7 NY3d at 296 [internal quotation marks omitted]). Depraved indifference "is embodied in conduct that is 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy' as to render the actor as culpable as one whose conscious objective" is to cause a particular result (*People v Suarez*, 6 NY3d 202, 214 [2005]). In *Feingold*, this Court did not depart from every aspect of our prior jurisprudence on this subject. Indeed, we have re-emphasized that there are certain "[q]uintessential examples" of depraved indifference, including—of particular relevance—the act of "driving an automobile along a crowded sidewalk at high speed" (*People v Suarez*, 6 NY3d at 214; *see also People v Gonzalez*, 1 NY3d 464, 467 [2004]).

Certainly, the Penal Law recognizes that intoxication may be used "by the defendant whenever it is relevant to negative an element of the crime charged" (Penal Law § 15.25). But it is also well settled that voluntary intoxication does not excuse a reckless state of mind (*see* Penal Law § 15.05 [3]). This is because "recklessness itself—defined as conscious disregard of a substantial risk—encompasses the risks created by [a] defendant's conduct in getting drunk" (*People v Register*, 60 NY2d at 280, *overruled on other grounds by People v Feingold*, 7 NY3d 288 [2006]). The same may be true for the "extreme recklessness . . . that is needed to establish depraved indifference" (*People v Baker*, 14 NY3d 266, 273 [2010]) since it makes little sense to allow intoxication to be asserted as a defense to depravedly indifferent conduct that is the direct result of severe inebriation: "there is no social or penological purpose to be served by a rule that permits one who voluntarily drinks to be

exonerated from failing to foresee the results of his conduct if he is successful at getting drunk" (*People v Register*, 60 NY2d at 280-281, *overruled on other grounds by People v Feingold*, 7 NY3d 288 [2006]).

When the accident happened in this case—in November 2005—the People's charging options were more limited than they are today. At that time, the Penal Law contained fewer assault and homicide offenses that applied to drunk drivers, such as vehicular assault in the second degree. In 2006, the Legislature added a new subdivision to first-degree vehicular assault (Penal Law § 120.04) by elevating second-degree vehicular assault (Penal Law § 120.03), a class E felony punishable by a maximum indeterminate sentence of $1^{1}/_{3}$ to 4 years in prison, to a class D felony punishable by a prison term of up to $2^{1}/_{3}$ to 7 years when a person causes serious physical injury to another individual while operating a vehicle with a blood alcohol level of .18% or more (*see* L 2006, ch 732, § 21, amending Penal Law § 120.04 [1]). Had this law been in existence a year earlier, defendant may have been charged with this offense.

After enactment of the 2006 legislation, and apparently as a result of our revision of depraved indifference jurisprudence, it became more difficult to prove depraved indifference in vehicular crimes where assault in the first degree or murder in the second degree was charged—a drunk driver accused of acting with depraved indifference to human life could "[p]erversely" try "to defend such a charge by using a claim of extreme intoxication" (Letter of Michael E. Bongiorno, President of New York State District Attorney's Association, to Governor Spitzer, June 15, 2007, Bill Jacket, L 2007, ch 345, at 16) to negate the requisite state of mind requirement.

Consequently, in 2007, the Legislature created the new crime of aggravated vehicular assault (*see* L 2007, ch 345). That crime is similar to vehicular assault in the first degree except that it requires the People to prove that the defendant drove recklessly (*see* Penal Law § 120.04-a). Aggravated vehicular assault is a class C felony punishable by an indeterminate prison term of up to 5 to 15 years.* In addition, another provision was added to article 125 of the Penal Law enacting the offense of aggravated vehicular homicide, a class B violent felony punishable by a maximum determinate sentence of 25 years' imprisonment. The

---

\* Like vehicular assault in the first degree, aggravated vehicular assault presumably could have been available in this case if it had been added to the Penal Law before this crime occurred.

stated purpose of this 2007 legislative package was to "repair th[e] apparent anomaly" (Bongiorno Letter, Bill Jacket, L 2007, ch 345, at 16) caused by *Feingold* in cases where an inebriated driver who maimed or killed another person could rely on his intoxication to mitigate criminal responsibility.

Yet there remains disagreement between courts as to whether the transformation of depraved indifference into a subjective state of mind precludes intoxication as a defense to that mens rea (*compare People v Wimes*, 49 AD3d 1286 [4th Dept 2008], *lv denied* 11 NY3d 743 [2008], *and People v Coon*, 34 AD3d 869 [3d Dept 2006], *with People v Wells*, 53 AD3d 181 [1st Dept 2008], *lv denied* 11 NY3d 858 [2008]). I therefore write separately to point out that the Legislature, which is entrusted with determining social policy and degrees of culpability, should resolve this perplexing question of whether intoxication, to whatever extent, functions as a defense to depraved indifference crimes.

There are a variety of options if the Legislature chooses to act. For example, Penal Law § 15.05 could be amended to add depraved indifference as a culpable mental state (consistent with *Feingold*) and specify, as it does with the mens rea of recklessness, that voluntary intoxication cannot be used to undermine a depravedly indifferent state of mind. The Legislature could also elect to include specific provisions in the first-degree assault and second-degree murder statutes to cover severely intoxicated drivers. This would differ from the existing aggravated vehicular assault and homicide statutes because they do not require the People to establish both excessive inebriation *and* serious injury or death to more than one person (*see* Penal Law §§ 120.04-a, 125.14). Or, if the Legislature sees fit, it could declare that intoxication is a defense to the depraved indifference mens rea component with respect to all crimes or just vehicular crimes. Although the courts have and will continue to rule on the applicability of the intoxication defense in particular cases, the Legislature is more suitably charged with determining the level of crime, the appropriate statutory defenses and the extent of punishment to attribute to the various crimes related to the operation of motor vehicles.

JONES, J. (concurring). While I agree with the result in the majority's memorandum, I write separately to express my position on the necessity of a temporal connection between mens rea and actus reus in the context of depraved indifference offenses.

Sometime after drinking at the house of a friend in Nassau County, defendant, with a blood alcohol level over .21, got into his car and drove onto the Wantagh State Parkway in the direction of oncoming traffic at a speed of 60 miles per hour. A few minutes later, defendant collided with two vehicles, injuring the drivers, one severely. Various witnesses observed that defendant appeared not to know that he was about to crash and never attempted to avoid the accident. When told about the accident, defendant stated that he "didn't know" what had happened and "didn't care." He was unable to tell the police at the scene if there was a passenger in his car and he kept falling asleep when the police tried to question him.

Defendant was charged with numerous offenses, including assault in the first degree (depraved indifference assault).[1] At defendant's nonjury trial, the People presented two theories in support of the first-degree assault charge, either of which, they argued, was sufficient to sustain a conviction. First, they argued that the nature of defendant's behavior behind the wheel established proof beyond a reasonable doubt that (1) he was aware of what he was doing while he was driving, and (2) he, with depraved indifference to human life, continued his course of conduct. The trial court, as the trier of fact, rejected this theory, finding that defendant was so intoxicated at the time of the accident that he was oblivious to his circumstances. Thus, according to the court, defendant lacked the mens rea of depraved indifference at the time of the collision.

The People's second theory was that defendant, prior to his state of oblivion, consciously drank himself "into a state of gross impairment." In particular, they argued that his conscious choice to drink, get drunk, and then drive reflected a complete indifference to the foreseeable circumstances he might face while driving drunk. In other words, it was the People's contention that defendant's conduct, prior to getting into his car, established his guilt of the crime, including the applicable mens rea.

The defense countered that all of the evidence, including the prosecution expert's testimony that extreme intoxication could cause micro-blackouts, showed that defendant was unaware of the danger he was creating and that if he did not know that he

---

1. Under Penal Law § 120.10 (3), "[a] person is guilty of assault in the first degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person."

was driving in the wrong direction, he was not guilty of depraved conduct. Further, the defense argued that at the time of the collision, defendant did not have the requisite depraved state of mind to be guilty of first-degree assault.

The trial court agreed with the People, holding that a conviction for assault in the first degree could be based on defendant's excessive drinking to a state of oblivion, knowing that shortly thereafter he would be driving himself home on heavily trafficked roads, "was evidence of depraved indifference to human life." In so holding, the court found that "liability for depraved conduct can be predicated on the facts of this case even though defendant was not aware or appreciative of the dangers of his conduct at the time of the collision or moments before."

In addition to assault in the first degree, Supreme Court convicted defendant of assault in the second degree, vehicular assault in the second degree, assault in the third degree, operating a motor vehicle while under the influence of alcohol (two counts), reckless driving, and other violations of the Vehicle and Traffic Law. The Appellate Division modified Supreme Court's judgment by vacating the conviction of assault in the first degree. Relying on *People v Feingold* (7 NY3d 288 [2006]), the court held the evidence was legally insufficient to establish that defendant acted with the culpable mental state of depraved indifference to human life at the time he collided with the two vehicles. The court found unpersuasive the People's contention that the mens rea component of depraved indifference assault may be satisfied by considering the defendant's state of mind at a point much earlier in time to the accident, when he drank excessively, knowing he was going to drive himself home. The People appeal by permission of the Appellate Division.

With respect to crimes requiring mental culpability and an act or omission,

> "it is a basic premise of Anglo-American criminal law that the physical conduct and the state of mind must concur. Although it is sometimes assumed that there cannot be such concurrence unless the mental and physical aspects exist at precisely the same moment of time, the better view is that there is concurrence when the defendant's mental state actuates the physical

conduct" (LaFave, Substantive Criminal Law § 6.3 [a], at 451 [2d ed] [footnotes omitted]).[2]

Based on the foregoing, the mens rea component of depraved indifference assault may not be satisfied by considering the defendant's state of mind at a point much earlier in time than the accident, in this instance when he was drinking at his friend's house. As such, it cannot be argued that defendant's mental state at the time he was drinking actuated his physical conduct. Stated differently, in this case, there is no concurrence of mens rea and actus reus. In conclusion, defendant's state of mind when he consumed the alcohol was too temporally remote from the act of driving to support a conviction of assault in the first degree.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Judges GRAFFEO and JONES concur in separate concurring opinions.

Order, insofar as appealed from, affirmed in a memorandum.

---

**2.** Actus reus is defined as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability" (Black's Law Dictionary 39 [8th ed 2004]).