People v McCray (2023 NY Slip Op 00502)

People v McCray

2023 NY Slip Op 00502

Decided on February 02, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 02, 2023

Before: Manzanet-Daniels, J.P., Moulton, González, Kennedy, JJ. 

Ind No. 3920/08 Appeal No. 12241-12241A Case No. 2016-2146 

[*1]The People of the State of New York, Respondent,
v
Lonnie McCray, Defendant-Appellant.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Julia L. Burke of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Lori Ann Farrington of counsel), for respondent.

Order, Supreme Court, Bronx County (Ralph Fabrizio, J.), entered July 21, 2022, which, after a hearing, denied defendant's CPL 440.10 motion, unanimously reversed, on the law, the judgment of conviction vacated, and the matter remanded for further proceedings. Appeal from judgment, same court and Justice, rendered January 30, 2015, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of 25 years to life, unanimously dismissed, as academic.
This Court previously reversed an order summarily denying defendant's CPL 440.10 motion alleging ineffective assistance of trial counsel and ordered a hearing, while holding defendant's direct appeal in abeyance (187 AD3d 679 [1st Dept 2020]). Supreme Court held an evidentiary hearing and denied the motion. We conclude that the motion should have been granted. At the hearing, trial counsel testified that each of the alleged errors at issue on appeal was a strategic decision. However, based on our review of the record, we find that certain highly prejudicial decisions by counsel were not, in fact, strategic, or, even if subjectively intended to be strategic, were objectively unreasonable.
The record does not support the hearing court's determination that counsel's waiver of preclusion of the unnoticed identification made by the sole eyewitness to the shooting was a legitimate trial strategy (see People v Rivera, 71 NY2d 705, 709 [1988]). As the court acknowledged in its decision denying the motion, trial counsel initially did not appreciate that by moving to suppress the identification, he waived preclusion of the unnoticed identification under CPL 710.30(3). The record does not support a finding that once counsel was cautioned about waiver by the court, he made a tactical decision to forgo preclusion in order to have the opportunity to cross-examine the eyewitness at an independent source hearing. On the contrary, even after cross-examining the witness, trial counsel sought preclusion of the identification, showing that he still did not understand that under CPL 710.30(3), he could no longer seek preclusion. Nor does the record support counsel's testimony that waiver of preclusion could not harm defendant at trial because the jury would still hear the witness's description of the shooter. According to counsel, this description was "spot on correct that there would be, in my opinion, no doubt in the jury's mind who it was that [he] was talking about," "like a stone-cold identification," and an "implicit identification." In fact, the description (based on the witness's fleeting observations) was vague: a tall, black man with a shaved or bald head.
In addition, although the suppression hearing court had suppressed this witness's photo identification of defendant, counsel nevertheless introduced at trial the mug shot shown to the witness. At the 440 hearing, counsel claimed he did this for the [*2]purpose of demonstrating to the jury the suggestive nature of that single photo identification procedure. However, had the witness's in-court identification been precluded, there would have been no reason to do so, and this only added to the prejudice against defendant. Moreover, trial counsel's claim, and the court's conclusion at the 440 hearing, that counsel did not seek removal of the word "shooter" from the photo because it showed the suggestiveness of the procedure is unsupported by the record. Evidence at the suppression hearing showed that it was written after the witness identified defendant, and counsel ultimately admitted at the 440 hearing that he did not know if it was written before the witness's identification. Similarly, his claim that he did not redact defendant's criminal history from the mug shot in order to show it related to a nonviolent drug crime is undermined by his opposition to that conviction being used for Sandoval impeachment. In these circumstances, it was objectively unreasonable to introduce the mug shot at all.
While the decision to forego a separate trial from the codefendant, standing alone, did not prejudice defendant, the record reveals other harmful errors by counsel. In particular, trial counsel did not object to a detective's improper identification of defendant in a blurry video (see e.g. People v Coleman, 78 AD3d 457, 458 [1st Dept 2010], lv denied 16 NY3d 829 [2011]). Although counsel claimed at the 440 hearing that he did this to show that the police were lying, it was unreasonable to forgo exclusion, in the first place, of inadmissible and damaging evidence placing defendant within two buildings of the shooting, as opposed to permitting its introduction and trying to convince the jury to reject it as a lie.
Without the various above-discussed evidence that would have been kept out of the trial had counsel made the correct decisions, the People's case would have been considerably weaker. The only remaining identifying witness provided circumstantial, rather than direct, evidence of defendant's guilt, and his testimony was extensively impeached. Because these errors were prejudicial (see Strickland v Washington, 466 US 668 [1984]; People v Caban, 5 NY3d 143, 155-56 [2005]), we find it unnecessary to reach defendant's remaining contentions regarding counsel's ineffectiveness and the court's conduct of the 440 hearing. In light of our disposition of the 440 appeal, the other issues raised on the direct appeal are academic, except that we decline to disturb any suppression rulings.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 2, 2023